IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

PAULA SUE MICHEL,

Plaintiff,

vs.

CAROLYN W. COLVIN,
Commissioner of Social Security,

Defendant.

No. C13-1041

RULING ON JUDICIAL REVIEW

## TABLE OF CONTENTS

I.    INTRODUCTION ........................................... 2

II.   PRINCIPLES OF REVIEW ................................. 2

III.  FACTS ................................................. 4
      A.   Michel's Education and Employment Background ............. 4
      B.   Vocational Expert's Testimony from the Administrative Hearing .... 4
      C.   Michel's Medical History ............................. 5

IV.   CONCLUSIONS OF LAW ................................. 9
      A.   ALJ's Disability Determination ........................ 9
      B.   Objections Raised By Claimant ........................ 11
           1.   RFC Assessment ............................... 12
           2.   Hypothetical Question ......................... 19

V.    CONCLUSION .......................................... 20

VI.   ORDER ............................................... 21

# I. INTRODUCTION

This matter comes before the Court on the Complaint (docket number 1) filed by Plaintiff Paula Sue Michel on December 30, 2013, requesting judicial review of the Social Security Commissioner's decision to deny her Title II disability insurance benefits. Michel asks the Court to reverse the decision of the Social Security Commissioner ("Commissioner") and order the Commissioner to provide her disability insurance benefits. In the alternative, Michel requests the Court to remand this matter for further proceedings.

# II. PRINCIPLES OF REVIEW

Title 42, United States Code, Section 405(g) provides that the Commissioner's final determination following an administrative hearing not to award disability insurance benefits is subject to judicial review. 42 U.S.C. § 405(g). 42 U.S.C. § 405(g) provides the Court with the power to: "[E]nter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . ." *Id.*

The Court will "affirm the Commissioner's decision if supported by substantial evidence on the record as a whole." *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012) (citation omitted). Substantial evidence is defined as "'less than a preponderance but . . . enough that a reasonable mind would find it adequate to support the conclusion.'" *Id.* (quoting *Jones v. Astrue*, 619 F.3d 963, 968 (8th Cir. 2010)); *see also Brock v. Astrue*, 674 F.3d 1062, 1063 (8th Cir. 2010) ("Substantial evidence is evidence that a reasonable person might accept as adequate to support a decision but is less than a preponderance.").

In determining whether the ALJ's decision meets this standard, the Court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (citation omitted). The Court not

only considers the evidence which supports the ALJ's decision, but also the evidence that detracts from his or her decision. *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012); *see also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (Review of an ALJ's decision "extends beyond examining the record to find substantial evidence in support of the ALJ's decision; [the court must also] consider evidence in the record that fairly detracts from that decision."). In *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994), the Eighth Circuit Court of Appeals explained this standard as follows:

> This standard is 'something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal.'

*Id.* (quoting *Turley v. Sullivan*, 939 F.2d 524, 528 (8th Cir. 1991), in turn quoting *Bland v. Bowen*, 861 F.2d 533, 535 (8th Cir. 1988)). In *Buckner v. Astrue*, 646 F.3d 549 (8th Cir. 2011), the Eighth Circuit further explained that a court "'will not disturb the denial of benefits so long as the ALJ's decision falls within the available 'zone of choice.'" *Id.* at 556 (quoting *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008)). "'An ALJ's decision is not outside that zone of choice simply because [a court] might have reached a different conclusion had [the court] been the initial finder of fact.'" *Id.* Therefore, "even if inconsistent conclusions may be drawn from the evidence, the agency's decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005) (citing *Chamberlain v. Shalala*, 47 F.3d 1489, 1493 (8th Cir. 1995)); *see also Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010) ("If substantial evidence supports the ALJ's decision, we will not reverse the decision merely because substantial evidence would have also supported a contrary outcome, or because we would have decided differently."); *Moore v. Astrue*, 572 F.3d 520, 522 (8th Cir. 2009) ("'If there is substantial evidence to support the Commissioner's

3

conclusion, we may not reverse even though there may also be substantial evidence to support the opposite conclusion.' *Clay v. Barnhart*, 417 F.3d 922, 928 (8th Cir. 2005).").

## III. FACTS

### A. Michel's Education and Employment Background

Michel was born in 1966. She is a college graduate. Prior to October 2009, when she alleges she became disabled, Michel worked for an Area Education Agency as a speech/language pathologist. She started working at that position in August 1990.

### B. Vocational Expert's Testimony from the Administrative Hearing

At the administrative hearing, the ALJ provided vocational expert Julie Svec with a hypothetical for an individual who is limited to sedentary work and can:

> only occasionally stoop, crouch, kneel and crawl, and the worker is unable to climb ladders, ropes or scaffolds at all.
>
> In addition, assume that this worker cannot be exposed to any extraordinary hazards on the job, and by that I mean work near dangerous moving machinery or work at unprotected heights where [if] someone sort of lost control of her body or lost strength . . . they would be in serious danger. . . . I want you to assume that this worker can't be exposed to extremes of temperature, and so just for these purposes, I'd like you to assume that this worker needs work indoors in a climate-controlled environment much like would be found in a typical office setting or retail store, something like that, air-conditioned, heated with no real dust, gases.
>
> Finally, I'd like you to assume that this worker can do only the most simple and repetitive and routine types of work, work that doesn't require any close attention to detail at all and doesn't require the use of any independent judgment on the job, and that's so because the work is so unchanging there's no new circumstance that the worker needs to adjudge or adapt or figure out how to respond to it because there are no such changes on the job.

4

(Administrative Record at 65.) The vocational expert agreed with the ALJ that under such limitations, Michel could not perform her past relevant work. The vocational expert testified, however, that Michel could perform the following jobs: (1) document preparer (500 positions in Iowa and 50,000 positions in the nation), (2) ticket checker (400 positions in Iowa and 13,000 positions in the nation), and (3) order clerk (400 positions in Iowa and 23,000 in the nation). The ALJ provided the vocational expert with a second hypothetical which was identical to the first hypothetical, except that "due to fatigue, the worker would be unable to use their hands to perform any job task whatsoever, in other words cannot grasp, finger, handle anything at all more than a total of two hours a workday[.]"[1] The vocational expert testified that under such limitations, Michel would be precluded from competitive employment.

### C. Michel's Medical History

On November 17, 2010, Dr. Laura Griffith, D.O., reviewed Michel's medical records and provided Disability Determination Services ("DDS") with a physical residual functional capacity ("RFC") assessment for Michel. Dr. Griffith determined that Michel could: (1) occasionally lift and/or carry 10 pounds, (2) frequently lift and/or carry less than 10 pounds, (3) stand and/or walk with normal breaks for at least two hours in an eight-hour workday, (4) sit with normal breaks for a total of about six hours in an eight-hour workday, and (5) push and/or pull without limitations. Dr. Griffith also determined that Michel could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. Additionally, Dr. Griffith found that Michel should avoid concentrated exposure to extreme cold and extreme heat. Dr. Griffith found no manipulative, visual, or communicative limitations. Dr. Griffith concluded that:

> [Michel] indicates she is debilitated by pain and fatigue. [A treating source] noted an improvement with therapy changes

---

[1] Administrative Record at 66.

and suggested she needed to be invested in improvement. Though she has limited participation she has no objective deficit and she is limited primarily by subjective complaints of pain and fatigue.

(Administrative Record at 425.)

On November 24, 2010, Michel was referred by DDS to Dr. Keith F. Gibson, Ph.D., for a mental status examination and psychological report. Dr. Gibson provided the following review of Michel's health history:

[Michel] is applying for benefits due to the debilitating effects of chronic fatigue syndrome and fibromyalgia. The chronic fatigue syndrome was diagnosed by her internist, and the fibromyalgia was subsequently diagnosed by her rheumatologist. The chronicity and severity of her chronic pain and chronic fatigue have generated a high level of depression and anxiety. [She] is on numerous medications to improve her condition. She sees a psychologist once every two to three weeks for psychotherapy.

(Administrative Record at 427.) Upon examination, Dr. Gibson noted that Michel's performance on the "Mini Mental Status Exam suggests that overall cognitive capacity is grossly intact with some difficulties in the areas of attention, concentration, and delayed recall."[2] Dr. Gibson diagnosed Michel with pain disorder, and mood disorder due to chronic fatigue syndrome with depressive features. Dr. Gibson concluded that:

[Michel] remains capable of remembering and understanding instructions, procedures, and locations in a work setting. Chronic fatigue and pain with concomitant worry and depressive symptoms significantly impair this individual's capacity to maintain attention, concentration, and pace sufficient for full-time gainful employment. Her capacity to interact appropriately with others in a work environment appears to be adequately retained. Her judgment is intact. She is able to manage daily living activities to make reasonable

_____

[2] Administrative Record at 429.

decisions for herself on a day-to-day basis. Chronic fatigue
and chronic pain impair her capacity to respond adaptively and
flexibly to changes in the work place.

(Administrative Record at 429-430.)

On January 13, 2011, Dr. David A. Christiansen, Ph.D., reviewed Michel's medical records and provided DDS with a Psychiatric Review Technique and mental RFC assessment for Michel. On the Psychiatric Review Technique assessment, Dr. Christiansen diagnosed Michel with mood disorder and pain disorder associated with both psychological factors and a general medical condition. Dr. Christiansen determined that Michel had the following limitations: mild restriction of activities of daily living, mild difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace. On the mental RFC assessment, Dr. Christiansen determined that Michel was moderately limited in her ability to: carry out detailed instructions, maintain attention and concentration for extended periods, and complete a normal workday and workweek without interruptions from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.

On September 17, 2012, Michel was referred by her attorney to "Work Systems Rehab & Fitness" for a functional capacity evaluation. The evaluation was performed by Dr. Mark Blankespoor, DPT. Dr. Blankespoor noted that Michel's primary diagnoses were chronic fatigue syndrome and fibromyalgia. Upon examination, Dr. Blankespoor found that Michel displayed "significantly" decreased ambulatory endurance, below average coordination with her bilateral upper extremities, and poor balance with her bilateral lower extremities. Dr. Blankespoor also found "significant" deficits in the following areas: lifting/carrying, pushing/pulling, sitting/standing tolerance, walking tolerance, bilateral upper extremity grip and pinch strength, and positional tasks, such as elevated work, forward bending, trunk rotation, squatting, crouching, kneeling, and

7

crawling. Dr. Blankespoor determined that Michel was capable of sedentary work. However, Dr. Blankespoor concluded that:

> While [Michel's] capabilities are in the sedentary category, she would have significant difficulty with performing work tasks on a full-time basis. She would not be able to safely perform lifting, carrying, pushing, pulling, gripping, pinching, sitting, standing, walking, dexterity or positional tasks on a continuous, day after day basis.

(Administrative Record at 580.)

In October 2012, at the request of Michel's attorney, Dr. John P. Viner, Michel's treating doctor, filled out a "Residual Functional Capacity Questionnaire" for Michel. Dr. Viner indicated that he had routinely seen Michel every 4 to 6 weeks for the past 10 years. Dr. Viner opined that Michel met the American College of Rheumatology criteria for fibromyalgia and chronic fatigue syndrome. Dr. Viner identified the following symptoms for Michel: multiple tender points, nonrestorative sleep, chronic fatigue, morning stiffness, muscle weakness, frequent severe headaches, numbness and tingling, depression, and chronic fatigue syndrome. Dr. Viner also identified fatigue, movement, overuse, cold, and stress as factors that precipitate pain. According to Dr. Viner, Michel would frequently experience pain or other symptoms severe enough to interfere with her attention and concentration during a typical eight-hour workday. Dr. Viner opined that Michel's prognosis was "prolonged disability." Interestingly, Dr. Viner offered no opinions of Michel's functional abilities; instead, he simply concluded that she was "unable to work."[3]

---

[3] Administrative Record at 588.

8

## IV. CONCLUSIONS OF LAW

### A. ALJ's Disability Determination

The ALJ determined that Michel is not disabled. In making this determination, the ALJ was required to complete the five-step sequential test provided in the social security regulations. *See* 20 C.F.R. § 404.1520(a)-(g); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011); *Page v. Astrue*, 484 F.3d 1040, 1042 (8th Cir. 2007). The five steps an ALJ must consider are:

> (1) whether the claimant is gainfully employed, (2) whether the claimant has a severe impairment, (3) whether the impairment meets the criteria of any Social Security Income listings, (4) whether the impairment prevents the claimant from performing past relevant work, and (5) whether the impairment necessarily prevents the claimant from doing any other work.

*Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (citing *Eichelberger*, 390 F.3d at 590); *Perks*, 687 F.3d at 1091-92 (discussing the five-step sequential evaluation process); *Medhaug v. Astrue*, 578 F.3d 805, 813-14 (8th Cir. 2009) (same); *see also* 20 C.F.R. § 404.1520(a)-(g). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (citing *Goff*, 421 F.3d at 790, in turn quoting *Eichelberger*, 390 F.3d at 590-91).

In considering the steps in the five-step process, the ALJ:

> first determines if the claimant engaged in substantial gainful activity. If so, the claimant is not disabled. Second, the ALJ determines whether the claimant has a severe medical impairment that has lasted, or is expected to last, at least 12 months. Third, the ALJ considers the severity of the impairment, specifically whether it meets or equals one of the listed impairments. If the ALJ finds a severe impairment that meets the duration requirement, and meets or equals a listed impairment, then the claimant is disabled. However, the

> fourth step asks whether the claimant has the residual functional capacity to do past relevant work. If so, the claimant is not disabled. Fifth, the ALJ determines whether the claimant can perform other jobs in the economy. If so, the claimant is not disabled.

*Kluesner v. Astrue*, 607 F.3d 533, 537 (8th Cir. 2010). At the fourth step, the claimant "bears the burden of demonstrating an inability to return to [his] or her past relevant work." *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009) (citing *Steed v. Astrue*, 524 F.3d 872, 875 n.3 (8th Cir. 2008)). If the claimant meets this burden, the burden shifts to the Commissioner at step five to demonstrate that "given [the claimant's] RFC [(residual functional capacity)], age, education, and work experience, there [are] a significant number of other jobs in the national economy that [the claimant] could perform." *Brock*, 674 F.3d at 1064 (citing *Ellis v. Barnhart*, 392 F.3d 988, 993 (8th Cir. 2005)). The RFC is the most an individual can do despite the combined effect of all of his or her credible limitations. 20 C.F.R. § 404.1545. The ALJ bears the responsibility for determining "'a claimant's RFC based on all the relevant evidence including the medical records, observations of treating physicians and others, and an individual's own description of his [or her] limitations.'" *Boettcher v. Astrue*, 652 F.3d 860, 867 (8th Cir. 2011) (quoting *Moore*, 572 F.3d at 523); 20 C.F.R. § 404.1545.

The ALJ applied the first step of the analysis and determined that Michel had not engaged in substantial gainful activity since October 22, 2009. At the second step, the ALJ concluded from the medical evidence that Michel has the following severe impairments: fibromyalgia, mood disorder, pain disorder, and chronic fatigue syndrome. At the third step, the ALJ found that Michel did not have an impairment or combination of impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. At the fourth step, the ALJ determined Michel's RFC as follows:

> [Michel] has the residual functional capacity to perform sedentary work . . . except she could only occasionally stoop,

crouch, kneel, or crawl. She would be unable to climb ladders, ropes, or scaffolds. She cannot be exposed to any extraordinary hazards on the job, such as working near dangerous moving machinery or unprotected heights where if she lost control of her body or strength [she] would be in serious danger. She could not be exposed to extremes of temperature and needs work indoors in a climate controlled environment, much like would be found in a typical office setting or retail store that is air conditioned and heated with no real dust or gases. She could do only the most simple, repetitive, and routine types of work that does not require any close attention to detail and does not require the use of any independent judgment on the job because the work is so unchanging there is no new circumstance that the worker needs to adjudge, adapt, or figure out how to respond.

(Administrative Record at 18.) Also at the fourth step, the ALJ determined that Michel was unable to perform any of her past relevant work. At the fifth step, the ALJ determined that based on her age, education, previous work experience, and RFC, Michel could work at jobs that exist in significant numbers in the national economy. Therefore, the ALJ concluded that Michel was not disabled.

### B. Objections Raised By Claimant

Michel argues that the ALJ erred in two respects. First, Michel argues that the ALJ's RFC assessment is flawed. Specifically, Michel argues that the ALJ's RFC assessment is not supported by substantial evidence, including improper consideration of the opinions of Michel's treating doctor, Dr. Viner, and consultative examining source, Dr. Gibson. Second, Michel argues that the ALJ provided a flawed hypothetical question to the vocational expert at the administrative hearing. Michel concludes that this matter should be remanded for an award of benefits. In the alternative, Michel asserts that this matter should be remanded for (1) a proper RFC assessment based on a proper consideration of the treating source and consultative source evidence, and (2) to allow the ALJ to provide the vocational expert with a proper hypothetical question.

11

## 1.   *RFC Assessment*

Michel argues that ALJ's RFC assessment is flawed. Specifically, Michel argues that the ALJ failed to properly consider the opinions of her treating doctor, Dr. Viner, and the opinions of consultative doctor, Dr. Gibson, when determining her RFC. Michel concludes that this matter should be remanded for an award of benefits; or in the alternative, remanded for further consideration of her RFC assessment.

When an ALJ determines that a claimant is not disabled, he or she concludes that the claimant retains the residual functional capacity to perform a significant number of other jobs in the national economy that are consistent with claimant's impairments and vocational factors such as age, education, and work experience. *Beckley*, 152 F.3d at 1059. The ALJ is responsible for assessing a claimant's RFC, and his or her assessment must be based on all of the relevant evidence. *Guilliams*, 393 F.3d at 803; *see also Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000) (same). Relevant evidence for determining a claimant's RFC includes "'medical records, observations of treating physicians and others, and an individual's own description of his [or her] limitations.'" *Lacroix v. Barnhart*, 465 F.3d 881, 887 (8th Cir. 2006) (quoting *Strongson*, 361 F.3d at 1070). While an ALJ must consider all of the relevant evidence when determining a claimant's RFC, "the RFC is ultimately a medical question that must find at least some support in the medical evidence of record." *Casey*, 503 F.3d at 697 (citing *Masterson v. Barnhart*, 363 F.3d 731, 738 (8th Cir. 2004)).

In considering medical source evidence, an ALJ is required to "assess the record as a whole to determine whether treating physicians' opinions are inconsistent with substantial evidence of the record." *Travis v. Astrue*, 477 F.3d 1037, 1041 (8th Cir. 2007) (citing 20 C.F.R. § 404.1527(d)(2)). "Although a treating physician's opinion is entitled to great weight, it does not automatically control or obviate the need to evaluate the record as a whole." *Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001) (citing *Prosch*

*v Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000)). "The ALJ may discount or disregard such an opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions." *Id.*; *see also Travis*, 477 F.3d at 1041 ("A physician's statement that is 'not supported by diagnoses based on objective evidence' will not support a finding of disability. *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003). If the doctor's opinion is inconsistent with or contrary to the medical evidence as a whole, the ALJ can accord it less weight.'*Id.*.); *Strongson v. Barnhart*, 361 F.3d 1066, 1070 (8th Cir. 2004) (an ALJ does not need to give controlling weight to a physician's RFC if it is inconsistent with other substantial evidence in the record); *Cabrnoch v. Bowen*, 881 F.2d 561, 564 (8th Cir. 1989) (the resolution of conflicts of opinion among various treating and examining physicians is the proper function of an ALJ). The ALJ may discount or disregard a treating physician's opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions. *Hamilton v. Astrue*, 518 F.3d 607, 609 (8th Cir. 2008).

Also, the regulations require an ALJ to give "good reasons" for assigning weight to statements provided by a treating physician. *See* 20 C.F.R. § 404.1527(d)(2). An ALJ is required to evaluate every medical opinion he or she receives from a claimant. 20 C.F.R. § 404.1527(d). If the medical opinion from a treating source is not given controlling weight, then the ALJ considers the following factors for determining the weight to be given to all medical opinions: "(1) examining relationship, (2) treating relationship, (3) supportability, (4) consistency, (5) specialization, and (6) other factors." *Wiese*, 552 F.3d at 731 (citing 20 C.F.R. §§ 404.1527(c)). "'It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians. The ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole.'" *Wagner*, 499 F.3d at 848 (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001)). The decision

13

must contain specific reasons for the weight given to the treating source's medical opinion, supported by evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight. SSR *96-2P*, 1996 WL 374188 (1996).

In assessing a consultative medical source, an ALJ considers the following factors for determining the weight to be given to the non-treating medical opinion: "(1) examining relationship, (2) treating relationship, (3) supportability, (4) consistency, (5) specialization, and (6) other factors." *Wiese*, 552 F.3d at 731 (citing 20 C.F.R. §§ 404.1527(d)). "'It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians. The ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole.'" *Wagner*, 499 F.3d at 848 (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001)).

Finally, an ALJ has a duty to develop the record fully and fairly. *Cox v. Astrue*, 495 F.3d 614, 618 (8th Cir. 2007); *Sneed v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004); *Wilcutts v. Apfel*, 143 F.3d 1134, 1137 (8th Cir. 1998). Because an administrative hearing is a non-adversarial proceeding, the ALJ must develop the record fully and fairly in order that "'deserving claimants who apply for benefits receive justice.'" *Wilcutts*, 143 F.3d at 1138 (quoting *Battles v. Shalala*, 36 F.3d 43, 44 (8th Cir. 1994)); *see also Smith v. Barnhart*, 435 F.3d 926, 930 (8th Cir. 2006) ("A social security hearing is a non-adversarial proceeding, and the ALJ has a duty to fully develop the record."). "There is no bright line rule indicating when the Commissioner has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis." *Mouser v. Astrue*, 545 F.3d 634, 639 (8th Cir. 2008) (citation omitted).

In determining Michel's RFC, the ALJ thoroughly addressed and discussed in great detail the opinions of her treating sources, examining sources, and non-examining

sources.[4]  For example, the ALJ discussed at length, Michel's treatment history with Dr. Viner, Dr. Isaac, Dr. Niemer, and Dr. Ijdo, all treating sources, from October 2009 through June 2012.[5]  In his discussion of these treating sources, the ALJ noted that in April 2010, Dr. Isaac found that Michel "'has a mind set that she has chronic fatigue' and that 'it would be up to her whether she wants to get better or not. . . .' The rheumatologist . . . started [her] on a trial of Savella.  Subsequent treatment notes indicated that [Michel] reported decreased aching symptoms and feeling better on Savella."[6]  The ALJ also noted that Dr. Niemer, Dr. Ijdo, and consulting doctors from the University of Iowa Hospitals and Clinics all agreed that Michel's diagnosis was fibromyalgia, but urged her to exercise on a consistent basis as treatment and not to over-medicate.[7]  In discussing Dr. Viner's treatment history, the ALJ noted that Dr. Viner found "laboratory testing during [Michel's] rheumatology evaluations had been normal and negative.  Physical examination findings indicated that [she] was weak and tired-appearing; however, the findings were otherwise unremarkable."[8]  In weighing Dr. Viner's opinions, the ALJ determined that:

> As for opinion evidence, [Michel's] primary care provider, Dr. Viner, indicated on several occasions his belief that [she] was disabled. . . .
>
> The undersigned gives that opinion little weight.  It is so vague that, even if it is true and correct, it would be virtually no use

---

[4] *See* Administrative Record at 19-27 (providing a thorough and detailed discussion of Michel's medical history, including addressing the opinions of treating, examining, and non-examining medical sources).

[5] *Id.* at 19-23.

[6] *Id.* at 20.

[7] *See* Administrative Record at 21 (Dr. Niemer); 22 (University of Iowa doctors and Dr. Ijdo).

[8] Administrative Record at 23.

in determining [Michel's] functional limits. Obviously, many people work successfully with a "low" functional capacity. His opinion that she is "disabled from employment" is a bare conclusion without any specificity regarding the criteria he is applying in reaching that conclusion. . . .

Opinions on issues reserved to the Commissioner, such as those expressed by Dr. Viner above, can never be entitled to controlling weight, but must be carefully considered to determine the extent to which they are supported by the record as a whole or contradicted by persuasive evidence.

Furthermore, the undersigned finds that little weight can be afforded to the opinions expressed by [Michel's] treating physician, as the opinions express[ed] are both internally inconsistent within the report and externally inconsistent with the doctor's prior treatment records.

More specifically, Dr. Viner reported that [Michel] experienced pain in her feet; however, medical records failed to indicate that he ever observed any pain symptoms in her feet.

Additionally, while [Michel] testified that "rainy days" are particularly hard on her, Dr. Viner concluded that "changing weather" did not cause her pain.

Similarly, while the doctor reported "frequent" problems with attention and concentration, treatment notes failed to indicate that the doctor objectively found any problems outside of [Michel's] subjective complaints. Of note, [her] mental health providers indicated that her concentration was good.

In addition, while Dr. Viner reported that [Michel] was "unable to work"; he failed to fill out any functional limitations resulting from her diagnosed impairments.

Moreover, Dr. Viner indicated that [Michel's] "symptoms and limitations on this questionnaire" applied to dates for the last

"10 years." However, contrary to that conclusion, [Michel] continued working successfully until October 2009. This makes it quite clear that Dr. Viner's opinions are inconsistent with the other substantial evidence in the record.

Based on these numerous inconsistencies, the undersigned affords the opinions of [Michel's] treating physician little weight.

(Administrative Record at 25-26.)

Similar to the discussion of Michel's physical impairments, the ALJ also thoroughly discussed and addressed Michel's mental health impairments.[9] For example, the ALJ noted that "[b]y May 2010, [Michel] denied having any depression and reported that she did not feel well physically. She reported being very fatigued and having difficulties concentrating. . . . Once again, mental status findings failed to support [her] allegations concerning difficulties with focus and concentration. . . . Subsequent medical check-ups indicated that [Michel] continued to deny having any depression or anxiety."[10] The ALJ also thoroughly addressed the consultative psychological examination of Michel performed by Dr. Gibson.[11] In weighing Dr. Gibson's opinions, the ALJ determined that:

The findings and opinions of Dr. Gibson have been considered as those from an examining, non-treating, medical source. Because the findings are generally consistent with the objective mental health evidence of record, the undersigned affords the opinions some weight. More specifically, medical records from psychiatric treatment with [Michel's] physician assistant indicated that she reported her anxiety and depression were controlled on medications. Notably, she generally denied any depression and reported that her anxiety was okay.

---

[9] *See* Administrative Record at 23-25.

[10] *Id.* at 23.

[11] *See* Administrative Record at 24-25 (providing thorough discussion of Dr. Gibson's opinions).

17

Furthermore, mental status findings were normal, consistent with the opinions that she remained capable of remembering and understanding, interacting with others, and managing daily activities independently. However, the opinion expressed by Dr. Gibson concerning impaired ability to maintain attention, concentration, and pace sufficient for full-time employment has been provided little weight. Of note, Dr. Gibson reported that this was, at least in part, due to [Michel's] complaints of chronic fatigue and pain. However, the psychologist never performed any physical functioning testing and this opinion appears to be outside the scope of his expertise. Furthermore, while [Michel] continually reported problems with concentration, none of her treating medical sources found any difficulties with concentration on examination. Because of these inconsistencies, this opinion is given little weight.

(Administrative Record at 24-25.)

In conclusion, the ALJ found that "the objective findings in this case fail to provide strong support for [Michel's] allegations of disabling symptoms and limitations. More specifically, the medical findings do not support the existence of limitations greater than the above listed residual functional capacity."[12] The ALJ further concluded that:

In sum, the above residual functional capacity assessment is supported by the objective medical evidence contained in the record. Treatment notes in the record do not sustain [Michel's] allegations of disabling symptoms. . . . [Michel] does experience some symptoms and limitations but only to the extent described in the residual functional capacity above.

(Administrative Record at 29-30.)

Having reviewed the entire record, the Court finds that the ALJ properly considered Michel's medical records, observations of treating physicians, and Michel's own

---

[12] Administrative Record at 19.

description of her limitations in making the ALJ's RFC assessment for Michel.[13] *See Lacroix*, 465 F.3d at 887. Furthermore, the Court finds that the ALJ's decision is based on a fully and fairly developed record. *See Cox*, 495 F.3d at 618. As for the opinion evidence, the Court finds that the ALJ properly considered and addressed the opinion evidence provided by Dr. Viner and Dr. Gibson. Also, the Court finds the ALJ provided "good reasons" for weight given to Dr. Viner's and Dr. Gibson's opinions. Because the ALJ considered the medical evidence as a whole, the Court concludes that the ALJ made a proper RFC determination based on a fully and fairly developed record. *See Guilliams*, 393 F.3d at 803; *Cox*, 495 F.3d at 618. Even if inconsistent conclusions could be drawn on this issue, the court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 301. Therefore, the Court concludes that Michel's assertion that the ALJ's RFC assessment is flawed and not supported by substantial evidence is without merit.

### 2. *Hypothetical Question*

Michel argues that the ALJ's hypothetical question to the vocational expert was incomplete because it did not properly account for all of her impairments. Michel also argues that the ALJ's hypothetical was incomplete and did not contemplate all of her functional limitations. Michel maintains that this matter should be remanded so that the ALJ may provide the vocational expert with a proper and complete hypothetical question.

Hypothetical questions posed to a vocational expert, including a claimant's RFC, must set forth his or her physical and mental impairments. *Goff*, 421 F.3d at 794. "The hypothetical question must capture the concrete consequences of the claimant's deficiencies." *Hunt v. Massanari*, 250 F.3d 622, 625 (8th Cir. 2001) (citing *Taylor v. Chater*, 118 F.3d 1274, 1278 (8th Cir. 1997)). The ALJ is required to include only those

---

[13] *See id.* at 19-30 (providing thorough discussion of the relevant evidence for making a proper RFC determination).

impairments which are substantially supported by the record as a whole. *Goose v. Apfel*, 238 F.3d 981, 985 (8th Cir. 2001); *see also Haggard v. Apfel*, 201 F.3d 591, 595 (8th Cir. 1999) ("A hypothetical question 'is sufficient if it sets forth the impairments which are accepted as true by the ALJ.' *See Davis v. Shalala*, 31 F.3d 753, 755 (8th Cir. 1994) (quoting *Roberts v. Heckler*, 783 F.2d 110, 112 (8th Cir. 1985).").

Having reviewed the entire record, the Court finds that the ALJ thoroughly considered and discussed both the medical evidence and Michel's testimony in determining Michel's impairments.[14] The Court further determines that the ALJ's findings and conclusions are supported by substantial evidence on the record as a whole. Because the hypothetical question posed to the vocational expert by the ALJ was based on the ALJ's findings and conclusions, the Court concludes that the ALJ's hypothetical question properly included those impairments which were substantially supported by the record as a whole. *See Goose*, 238 F.3d at 985; *see also Forte v. Barnhart*, 377 F.3d 892, 897 (8th Cir. 2004) (an ALJ need only include those work-related limitations that he or she finds credible). Therefore, the ALJ's hypothetical question was sufficient.

## V. CONCLUSION

The Court finds that the ALJ considered the medical evidence as a whole, and made a proper RFC determination based on a fully and fairly developed record, including proper consideration and weighing of the opinions of Dr. Viner and Dr. Gibson. The Court also finds that the ALJ's hypothetical question to the vocational expert properly included those impairments substantially supported by the record as a whole. Accordingly, the Court determines that the ALJ's decision is supported by substantial evidence and shall be affirmed.

---

[14] *See* Administrative Record at 19-30.

### *VI. ORDER*

1.  The final decision of the Commissioner of Social Security is **AFFIRMED**;

2.  Plaintiff's Complaint (docket number 1) is **DISMISSED** with prejudice; and

3.  The Clerk of Court is directed to enter judgment accordingly.

DATED this 2nd day of September, 2014.

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA